### WALTER J. McMURRAY'S (dependents') CASE.

Suffolk. November 4, 1953. — January 6, 1954.

Present: QUA, C.J., WILKINS, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Workmen's Compensation Act,* Injuries to which act applies. *Proximate Cause.*

Evidence in a workmen's compensation case of the circumstances in which an investigator of the registry of motor vehicles, who had heart trouble, died of a coronary thrombosis while making a distressing and "nerve wracking" investigation of an unusual automobile accident involving the death and possible suicide of an acquaintance of his, together with medical testimony, warranted a finding that the coronary thrombosis was brought about by the effect of the emotional strain of the investigation upon the investigator's preëxisting heart condition and was a personal injury arising out of his employment.

CERTIFICATION to the Superior Court of a decision by the Industrial Accident Board under the workmen's compensation act.

The case was heard by *Paquet, J.*

*Malcolm M. Donahue*, Assistant Attorney General, for the Commonwealth, insurer.

*Charles J. Kickham, Jr.*, for the claimants.

COUNIHAN, J.  This is an appeal by the Commonwealth of Massachusetts, a self insurer, from a decree of the Superior Court awarding compensation to dependents on account of the death of an employee, in accordance with a decision of the reviewing board of the Industrial Accident Board which affirmed and adopted the findings and decision of the single member.

The single member found "that the decedent in this case suffered an injury arising out of and in the course of his employment on October 19, 1951, and that death ensued and was causally connected to said injury, having been incurred because of additional stress and strain on a pre-existing diseased heart."  •

The sole issue is whether the evidence warrants the finding that the employee suffered a personal injury arising out of and in the course of his employment.  We think that the decree was correct.

The evidence may be summarized as follows: Walter J. McMurray was fifty-one years old when he suddenly died on October 19, 1951, at about 4 P.M.  He had been employed by the registry of motor vehicles of the Commonwealth for about twenty-two years.  At the time of his death he was an investigator and as such he was investigating an unusual fatal accident in Greenfield.  This accident, which happened on October 17, 1951, involved the death of a Mrs. Plouff.  She was riding in an automobile, in good mechanical condition, with her son who was about twenty years old and an epileptic.  There was a small pet dog on the front seat with her and her son.  The automobile left the highway, struck a cement abutment, and went over a cement dam into Green River.  The woman drowned but the son was rescued and taken to a hospital.  There was some question as to who was driving the automobile and whether her death was a result of suicide or an accident. The episode received considerable publicity in the press

and otherwise because of the uncertainty as to what actually happened.   The superior of the decedent told him that he wanted a report as soon as possible.   The decedent was making a complete investigation and in pursuance thereof talked with the son at the hospital between 2:30 and 3 P.M. on the day he died.   The son was in a state of shock and seemed "to be in a fog, a daze."   This interview was depressing.   After leaving the hospital in furtherance of his investigation he went to the home of a Miss Danihy who was supposed to know something about the circumstances leading up to the accident.   He was seated in a chair, and after he was there five or six minutes he suffered a heart attack and died.   The cause of death was coronary thrombosis.   The decedent was a conscientious man who took his work very seriously.   He was disturbed and worried on the day of his death because of the distressing interview at the hospital and because he was anxious to get his report in the office before 4:30 P.M.   He had known Mrs. Plouff personally and was much concerned about the question of suicide.   The investigation imposed upon him was a "nerve wracking job" of making the right decision as to whether the deceased woman had committed suicide.   His personal physician, who was also the medical examiner for that district, had treated the decedent for about a year for a heart condition.   He had advised him to avoid any physical or mental stress.   He saw him on October 17, 1951, and noticed nothing unusual about his condition.   He testified that in his opinion an emotional stress or strain brought about by the investigation he was making hastened or aggravated the preëxisting heart condition the decedent had and caused death.   Specifically he said, "I would say it was like the last straw that broke the camel's back; he simply could not take that strain on his heart."   Another medical expert in answer to a hypothetical question which embodied substantially all the evidence heretofore recited, said, "I would feel there is a connection between the facts outlined in the hypothetical question, the emotional, nervous influence produced by the situation outlined in the hypothetical

question and the death of the inspector," and an expert for the Commonwealth testified "that an emotional strain can precipitate a heart attack just as physical strain can if it is a pretty profound strain."

It has been well established by this court that the decision of the reviewing board unless tainted by error of law is to stand if supported by the evidence, including all rational inferences. *Chapman's Case*, 321 Mass. 705, 707. *O'Flaherty's Case*, 325 Mass. 303, 305. *Paltsios's Case*, 329 Mass. 526, 528. While this case goes to the verge we are satisfied that there was sufficient evidence to warrant the findings of the board. "When a pre-existing heart disease of the employee is accelerated to the point of disablement . . . there may be found to have been a personal injury" within the meaning of the act. *Madden's Case*, 222 Mass. 487, 496. *O'Flaherty's Case, supra*. It is true that usually the emotional stress or strain appears to have been accompanied by some physical exertion in connection with the work of the employee, but we perceive no difference between a stress or strain brought about by physical exertion and that occasioned by distress, worry, fear, or anxiety. *Charon's Case*, 321 Mass. 694. *Egan's Case, ante*, 11.

The Commonwealth argues and we agree that there was no direct evidence that the decedent suffered an emotional disturbance at any time during the investigation. However, essential facts tending to prove the existence of such a condition need not be proved by direct evidence but may be established by reasonable inferences from facts shown to exist. *Paltsios's Case*, 329 Mass. 526, 528. We do have opinions of medical experts, on the basis of facts which the evidence tended to show, that the employee suffered emotional stress or strain.

In *Brzozowski's Case*, 328 Mass. 113, 115–116, we said, "We recognize that there are decisions which hold that where the employee's incapacity or death is caused by a gradual breaking down of tissue as a result of work over a long period it cannot be said to arise from a personal injury within the meaning of the act . . . [with cases cited]. The

line between cases of that type and those where an employee suffers a strain in the performance of his work may at times be difficult to ascertain, but it exists nonetheless. Whether the employee's death here was caused by a gradual degeneration of his cardiac organs or was accelerated by a strain or exertion attributable to his work on June 6 was a question of fact for the board to decide." Here as in that case we cannot say that the decision of the board was unwarranted.

In view of the finding of the board that the injury arose out of and in the course of his employment, it is unnecessary to consider the effect of the presumption afforded by G. L. (Ter. Ed.) c. 152, § 7A, inserted by St. 1947, c. 380.

In the opinion of a majority of the court the decree must be affirmed. Costs of this appeal under G. L. (Ter. Ed.) c. 152, § 11A, inserted by St. 1945, c. 444, shall be allowed by the single justice.

*So ordered.*